**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| BULLETIN MARKETING LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 17-cv-07211-BLF<br><br>**ORDER GRANTING WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Re: ECF 27] |

This action involves purported unlawful conduct by Defendant Google LLC ("Google") in relation to its online advertisement marketplace services. Google moves to dismiss certain claims in Plaintiff Bulletin Marketing LLC's ("Bulletin Marketing") first amended complaint. Mot., ECF 27. Bulletin Marketing opposes the motion. Opp'n, ECF 28. The Court has considered the parties' briefing and oral argument presented at the hearing on the motion held on June 21, 2018. For the reasons stated below and on the record at the hearing, Google's motion to dismiss is GRANTED WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART.

**I.  BACKGROUND**

Google is the largest online marketing/advertising business in the world. First. Am. Compl. ("FAC") ¶ 9, ECF 25.  The AdWords Advertising Program ("AdWords") is Google's primary advertising service. *Id.*  The Google AdSense Content program ("AdSense") enables website publishers to earn revenue from AdWords advertisements displayed on websites under their control. *Id.* ¶ 10.

Like AdSense, Google's DoubleClick Ad Exchange ("AdX") service allows website publishers to display advertisements in exchange for a share of the advertising revenue paid to

Google by advertisers for each "impression" (i.e., each time a unique user views the publisher's website displaying the advertisements). FAC ¶ 11. AdX is an ad exchange, which means that it consolidates advertising demand from AdWords and other ad networks, exchanges, and demand-side platforms to participating AdX publishers. *Id.* ¶ 13. AdX allows businesses to participate on the publishing side as managers of websites belonging to their clients. *Id.* ¶ 16. Such businesses are called Network Partner Managers ("NPM"). *Id.* Bulletin Marketing was an NPM. *Id.*

The Google Services Agreement, which Bulletin Marketing entered into, governs the relationship between AdX publishers and Google. FAC ¶ 19; *see* Ex. 1 to FAC ("Google Services Agreement"), ECF 25-1. The Google Services Agreement contains the following provision:

> **Section 8.2: Google Payments**
> . . .
>
> (b) Google's payments for the Services under this Agreement will be based on Google's accounting which may be filtered to exclude (i) invalid queries, impressions, conversions, or clicks, and (ii) any amounts refunded to advertisers in connection with Company's failure to comply with this Agreement, as reasonably determined by Google.

*Id.* ¶ 20.

On or around February 16, 2017, a few days before Google was due to pay Bulletin Marketing's accrued AdX earnings, Google disabled Bulletin Marketing's account for purported policy violations. FAC ¶ 27. Although Google never sent any notice to Bulletin Marketing that its AdX account was in violation of any policy, Google withheld payment of all of Bulletin Marketing's accrued AdX earnings for the last earnings period. *Id.* ¶ 30. Bulletin Marketing submitted an internal appeal to Google. *Id.* ¶ 33. However, Google rejected that appeal through an auto-generated e-mail. *Id.* ¶ 35. According to Bulletin Marketing, Google always confiscates the entirety of an AdX publisher's accrued earnings even if a substantial portion of the earnings resulted from valid website traffic. *See id.* ¶ 37.

On December 20, 2017, Bulletin Marketing filed this purported class action against Google. The operative FAC was filed on March 20, 2018. In the FAC, Bulletin Marketing asserts four class action claims: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) breach of implied duty to perform with reasonable care; and (4) violation of

California's Unfair Competition Law.  Google moves to dismiss claims 2 to 4.

**II.     LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**III.    GOOGLE'S REQUEST FOR JUDICIAL NOTICE**

In connection with its reply, Google requests that the Court take judicial notice of the following five documents: (1) Third Amended Complaint in *Free Range Content v. Google Inc.*, No. 5:14-cv-2329 (N.D. Cal.); (2) Amended Complaint in *Online Global, Inc. et al. v. Google Inc.*, No 3:16-cv-5822 (N.D. Cal.); (3) Amended Complaint in *Super Cray Inc. v. Google Inc.*, No. 5:15-cv-0109 (N.D. Cal.); (4) Complaint in *Ogtanyan v. Google Inc.*, No. 1-14-cv-259301 (Cal. Super. Ct.); and (5) Amended Class Action Complaint in *AdTrader, et al. v. Google LLC*, No. 5:17-cv-7082-BLF (N.D. Cal.).  Reply 5–6 n.5, ECF 34; Wong Decl. in Supp. of Reply, ECF 35. The request is GRANTED as the Court may take judicial notice of court filings although specific factual findings and legal conclusions set forth in the documents may not bind this Court. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of court filings and other matters of public record).

**IV.    DISCUSSION**

The Court now turns to Google's motion to dismiss claims 2 to 4 in the FAC pursuant to Rule 12(b)(6).  For the reasons that follow, Google's motion to dismiss is GRANTED WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART.

### A. Second Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing

The second cause of action asserts a claim for breach of the implied covenant of good faith and fair dealing. According to Google, the FAC alleges four theories in support of that claim: Google (1) fails to provide publishers a meaningful appeal after termination; (2) withheld accrued earnings directly tied to valid activity; (3) withheld publishers' earnings close to the earnings payout date; and (4) does not allow publishers to get relief from Google even when it withheld earnings that are tied to valid activity. *See* Mot. 5 (citing FAC ¶¶ 72, 76, 78–80, 82). Google contends that those allegations do not support a claim for breach of the implied covenant of good faith and fair dealing. *Id.* at 5–8.

Bulletin Marketing responds that the second cause of action is adequately alleged for four reasons: (1) Google frustrates publishers' right to receive accrued revenues by failing to communicate and provide a meaningful appeal; (2) Bulletin Marketing is allowed to plead a claim for breach of the implied covenant as an alternative to its breach of contract claim; (3) Google acted in bad faith by withholding accrued earnings on or around the day those earnings were to be paid by Google; and (4) Google does not allow publishers to receive the benefits of their contract by making the decision to withhold payment to be final and irreversible. Opp'n 6–14.

The Court finds that the FAC does not adequately plead the second cause of action. "[T]he implied covenant of good faith and fair dealing's application is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, No. 5:12-CV-06209-EJD, 2013 WL 3974537, at *7 (N.D. Cal. July 31, 2013) (internal quotation marks and citation omitted). However, as pled, the FAC's allegations attempt to add obligations that do not expressly appear in the Google Services Agreement. As such, the allegations which Bulletin Marketing relies on fail to support a claim for breach of the implied covenant of good faith and fair dealing. The Court therefore GRANTS Google's motion to dismiss the second cause of action WITH LEAVE TO AMEND.

During the hearing, Google argued that the Google Services Agreement applies an objective standard for Google to determine whether to make payments to the publisher. Hearing

4

Tr. 44:10–25, ECF 46 (citing § 8.2 of the Google Services Agreement). In Google's view, the application of the objective standard means that a claim for breach of the implied covenant of good faith and fair dealing is subsumed by Bulletin Marketing's breach of contract claim. *See id.*; Mot. 6–7 (citing *Free Range Content, Inc. v. Google Inc.*, No. 14-CV-02329-BLF, 2016 WL 2902332, at *16 (N.D. Cal. May 13, 2016)). Google's argument has merit. The Court will allow Bulletin Marketing to amend the second cause of action to the extent that the parties' contract is not deemed to impose an objective standard. *See* Hearing Tr. 52:15–18.

### B. Third Cause of Action: Breach of the Implied Duty to Perform with Reasonable Care

The FAC's third cause of action asserts a claim for breach of the implied duty to perform with reasonable care. FAC ¶¶ 84–93. Specifically, the FAC pleads this claim in two alternative situations:

(1) if "the Court find[s] that the Google Services Agreement *does not impose* an express contractual obligation on Google to reasonably determine that . . .there was invalid activity and that . . . amounts were refunded to advertisers in connection with a publisher's failure to comply with the Google Services Agreement, before Google could withhold payments to that publisher" or

(2) if "the Court finds that the contract *does impose* such an express contractual obligation upon Google, then Bulletin [Marketing] brings this claim in the alternative so that it can elect between contract and tort remedies against Google."

FAC ¶ 85 (emphasis added).

Google argues that the third cause of action is duplicative of Bulletin Marketing's claim for breach of contract because those two claims rely on the same allegations. Mot. 8–9. Google also contends that the third cause of action improperly attempts to transmute the breach of contract claim into a tort claim. *Id.* at 9 (citing FAC ¶ 85 ("Bulletin [Marketing] brings this claim in the alternative so that it can elect between contract and tort remedies.")).

Bulletin Marketing responds that Google's arguments fail because California law recognizes that a breach of the implied duty to perform with reasonable care constitutes a tort

5

1 claim. Opp'n 14–15 (citing *Holguin v. DISH Network LLC*, 229 Cal. App. 4th 1310, 1314 (Ct.

2 App. 2014); *see also id.* at 16 (citing *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1239 (N.D.

3 Cal. 2017)). In Bulletin Marketing's view, its claim for breach of implied duty to perform with

4 reasonable care is broader in scope than the breach of contract claim. *Id.* at 16.

The Court first turns to the FAC's second alternative situation. Bulletin Marketing seeks to assert its implied duty claim when "the contract *does impose* . . . an express contractual obligation upon Google." *See* FAC ¶ 85 (emphasis added). In this situation, the alleged implied duty does not exist because the contract at issue already expressly contains the purported obligation. Bulletin Marketing cannot assert a non-existent implied duty. The claim which Bulletin Marketing seeks to assert would be subsumed in its breach of contract claim. Thus, Google's motion to dismiss the third cause of action to the extent it is based on the FAC's second alternative situation is GRANTED WITHOUT LEAVE TO AMEND.

The Court next turns to the FAC's first alternative situation. As mentioned above, Bulletin Marketing seeks to bring a breach of implied duty to perform with reasonable care claim when "the Google Services Agreement *does not impose* an express contractual obligation on Google to reasonably determine that . . . there was invalid activity and that . . . amounts were refunded to advertisers . . . before Google could withhold payments to that publisher." FAC ¶ 85 (emphasis added). Bulletin Marketing relies on *Holguin* and *Letizia* to support its position that its claim for a breach of implied duty is a tort claim. *See* Opp'n 15–16.

However, as Google argues (Reply 9; *id.* at 9 n.7), *Holguin* and *Letizia* did not hold that a claim for breach of implied duty constitutes a tort claim. For example, the court in *Holguin* explained that "express contractual terms give rise to implied duties, violations of which may themselves constitute *breaches of contract*." 229 Cal. App. 4th at 1324 (emphasis added). To be sure, the court stated that "a common-law duty to perform with care, skill . . . and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." *Id.* (citing *Roscoe Moss Co. v. Jenkins*, 55 Cal. App. 2d 369, 376 (Ct. App. 1942)). But when citing *Roscoe Moss*, the court in *Holguin* does not appear to have meant that a defendant who breaches a duty implied in the contract is liable for tort damages. Such a reading of *Holguin* is consistent with the

6

courts' recognition that "[t]he mere negligent breach of a contract is insufficient to give rise to tort damages." *Valenzuela v. ADT Sec. Servs., Inc.*, 820 F. Supp. 2d 1061, 1071 (C.D. Cal. 2010); *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (Cal. 1999) ("[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law."). In fact, *Holguin* was addressing only the trial court's jury instruction regarding an implied duty in connection with the plaintiff's breach of contract claim. *Id.* at 1317, 1324. Tort liability was not at issue.

Similar to *Holguin*, *Letizia* did not hold that a breach of an implied duty to perform with reasonable care supports tort liability. While the court in *Letizia* recognized that an implied duty is "as much a part of the contract as if expressly set forth" (267 F. Supp. 3d at 1249 (citation omitted)), it did not conclude that a breach of such a duty constitutes a tort claim. Rather, the court's analysis exclusively focused on the parties' contractual obligations. *See* 267 F. Supp. 3d at 1249–53.

During the hearing, counsel for Bulletin Marketing indicated that California Civil Jury Instructions ("CACI") 328 titled "Breach of Implied Duty to Perform with Reasonable Care" supports Bulletin Marketing's position. Hearing Tr. 19:19–20:16. However, a review of CACI shows that a claim for breach of implied duty to perform with reasonable care permits contract remedies rather than tort remedies. *See* CACI (listing "breach of implied duty to perform with reasonable care" under the breach of contract section). In addition, Bulletin Marketing has not pointed to any case where the court awarded tort damages for a breach of implied duty to perform with reasonable care.

For the above reasons, the Court agrees with Google's argument that Bulletin Marketing cannot rely on a claim for breach of implied duty to perform with reasonable care to recover tort damages. The FAC alleges that this claim is asserted as a tort claim. *See* FAC ¶ 85. Accordingly, Google's motion to dismiss the third cause of action is GRANTED WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART. The dismissal is without leave to amend insofar as Bulletin Marketing intended to pursue that claim as a tort claim. Bulletin Marketing, however, may amend the third cause of action to allege that it seeks only contract

1  remedies based on this claim. In that event, the amended claim must contain sufficient factual
2  allegations to support the elements of a claim for breach of implied duty to perform with
3  reasonable care. This ruling does not determine whether such a claim is meritorious in this case.

### C. Fourth Cause of Action: Violation of California's Unfair Competition Law

Google argues that Bulletin Marketing lacks standing to assert a claim under California's Unfair Competition Law ("UCL") on the grounds that it did not bring this case for "the public in general or individual consumers." Mot. 9 (citing *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012)). Google also contends that Bulletin Marketing fails to allege that Google engaged in unlawful, fraudulent, or unfair conduct. *Id.* at 10–12.

Bulletin Marketing responds that "Google's practice of disabling publisher's AdX accounts and withholding the entirety of their accrued earnings implicates the public interest." Opp'n 17 (citing FAC ¶ 97). In Bulletin Marketing's view, this Court found that nearly identical allegations established standing in *Free Range Content, Inc. v. Google Inc.*, No. 14-CV-02329-BLF, 2016 WL 2902332 (N.D. Cal. May 13, 2016). Opp'n 17.

The Court is unpersuaded by Bulletin Marketing's arguments. "[W]here a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (Ct. App. 2007). The FAC does not contain adequate factual allegations showing that the named Plaintiff Bulletin Marketing is not a sophisticated corporate plaintiff. In fact, the FAC suggests the opposite. *See, e.g.*, FAC ¶ 15 ("AdX is viewed by industry participants as a more sophisticated ad placement service compared to AdSense, and therefore attracts more experienced and/or larger publishers."); *id.* ¶ 17 ("Due to the sophisticated features offered by AdX, website content creators often engage NPM partners to focus on optimizing the revenue earned from Google advertisements placed on their websites."). Also, *Free Range*, which involved Google's AdSense service, is distinguishable. In that case, the complaint alleged that the named plaintiffs—two of whom were individuals—were "small and unsophisticated entities." *See* Ex. 1 to Wong Decl. ("Third Am. Comp. in Free Range") ¶ 167, ECF 35-1. In contrast, the FAC contains no such allegations. As

8

such, the Court finds that the FAC fails to plead that the named Plaintiff Bulletin Marketing has standing to bring the UCL claim.

The FAC also raises a concern whether it sufficiently alleges that Google engaged in "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17204. The Court need not reach this issue because the FAC fails to allege that the named Plaintiff Bulletin Marketing has standing to pursue the UCL claim.

Accordingly, the Court GRANTS Google's motion to dismiss the fourth cause of action WITH LEAVE TO AMEND.

## V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Google's motion to dismiss the second cause of action based on breach of the implied covenant of good faith and fair dealing is GRANTED WITH LEAVE TO AMEND.

(2) Google's motion to dismiss the third cause of action based on breach of the implied duty to perform with reasonable care is GRANTED WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART.

(3) Google's motion to dismiss the fourth cause of action based on violation of California's Unfair Competition Law is GRANTED WITH LEAVE TO AMEND.

If Bulletin Marketing wishes to amend the complaint, the amended complaint must be filed **within thirty (30) days of the date of this order**.

**IT IS SO ORDERED.**

Dated: July 13, 2018

_____
BETH LABSON FREEMAN
United States District Judge