UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BULLETIN MARKETING LLC,<br>　　　　Plaintiff,<br>　v.<br>GOOGLE LLC,<br>　　　　Defendant. | Case No.17-cv-07211-BLF   (VKD)<br><br>**ORDER RE SEPTEMBER 13, 2018 JOINT DISCOVERY DISPUTE LETTER**<br><br>Re: Dkt. No. 58 |

Plaintiff Bulletin Marketing LLC ("Bulletin Marketing") moves to compel defendant Google LLC ("Google") to produce documents in response to Bulletin Marketing's Requests for Production Nos. 27 and 28. The Court finds this matter suitable for decision without a hearing.

Having considered the submissions of the parties, the Court denies Bulletin Marketing's motion to compel.

## I.  BACKGROUND

Google's DoubleClick Ad Exchange ("AdX") service permits website publishers to display advertisements in exchange for a share of the revenue advertisers pay to Google. Dkt. No. 56 ¶¶ 15-19. Bulletin Marketing participated in this service as a publisher and as a manager of the websites of other publishers, a role Google calls "Network Partner Manager" or "NPM." *Id.* ¶¶ 25-27. The services agreement between Google and the AdX publishers and NPMs, including Bulletin Marketing, specifies the conditions under which Google may withhold advertising revenue payments:

> Section 8.2:  Google Payments
>
> . . .
>
> (b) Google's payments for the Services under this Agreement will be based on Google's accounting which may be filtered to exclude (i)

> invalid queries, impressions, conversions, or clicks, and (ii) any amounts refunded to advertisers in connection with Company's failure to comply with this Agreement, as reasonably determined by Google.

*Id.* ¶ 22. According to Bulletin Marketing, Google does not "reasonably determine" the amounts subject to withholding and refund, but instead withholds all of a publisher's accrued earnings if only some of its webpages have invalid activity or policy violations, and does not refund the withheld amounts to affected advertisers. Dkt. No. 58 at 1. Bulletin Marketing asserts a claim for breach of contract against Google on behalf of itself and a proposed class of AdX publishers whose accrued earnings were withheld by Google. Dkt. No. 56 ¶¶ 55-74. The putative class consists of publishers for whom (1) Google withheld payment amounts due to invalid activity or policy violations, and (2) those withheld amounts were not fully refunded to advertisers. *Id.* ¶¶ 48-49.

Bulletin Marketing seeks the following documents from Google:

> Request No. 27: DOCUMENTS sufficient to identify each AdX PUBLISHER and NPM, and their contact information, that had their AdX accounts terminated, disabled, or suspended by YOU but thereafter reinstated or reactivated by YOU, from 2014 through the present.

> Request No. 28: DOCUMENTS sufficient to identify each AdX PUBLISHER and NPM, and their contact information, that have had their previously withheld or reduced AdX earnings paid to them by YOU following their submissions of an internal appeal.

Dkt. No. 58-1 at 1, 2. It argues that these documents are relevant to its breach of contract claim because Google's refusal, as a matter of policy, to communicate with publishers following account terminations and earnings withholdings (including during any internal appeals process) is relevant to whether Google "reasonably determined" what amounts to withhold from those publishers. Dkt. No. 58 at 2. In addition, Bulletin Marketing argues that these documents are relevant to the question of whether some potential class members are atypical. *Id.* at 3.

Google argues that the discovery Bulleting Marketing seeks is not relevant to any claim in the case, including the identification of members of the putative class, but instead concerns subject matter—Google's appeal process—that is not at issue in the case. *Id.* at 6. Google also contends that discovery of the identities of even putative class members is not relevant because Bulletin

Marketing has not described any information that it will need to obtain directly from such class members. *Id.* at 7.

## II. DISCUSSION

A party may obtain discovery of any matter that is relevant to a claim or defense and that is "proportional to the needs of case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, Bulletin Marketing bears the burden of showing that the documents it seeks are relevant to a claim or defense.

Requests Nos. 27 and 28 do not seek information relevant to Bulletin Marketing's breach of contract claim. That claim concerns Google's improper withholding of payment amounts owed to publishers, and the putative class includes only publishers who have had payment amounts withheld and whose withheld amounts have not been refunded to advertisers. By contrast, Bulletin Marketing's document requests seek information identifying publishers who have successfully persuaded Google to reinstate or reactivate their AdX accounts or to pay amounts owed to them.

Bulleting Marketing argues that Google's alleged failure to communicate with publishers and managers about withholding of payment supports its claim that Google could not have "reasonably determined" the payment amounts subject to withholding under section 8.2 of the services agreement, and that this same failure to communicate likely manifested itself in the scenarios contemplated by Requests Nos. 27 and 28, and is relevant for that reason. *Id.* at 2–3. The Court is not persuaded. The possibility that Google failed to communicate with publishers who were ultimately successful in reversing an initial adverse decision by Google has very little bearing on Bulletin Marketing's breach of contract claim, which challenges Google's decision to withhold payments to publishers and not fully refund them to advertisers. Moreover, Bulletin Marketing's press for documents responsive to these two requests seems disingenuous. By its own account, Bulletin Marketing expects that Google has few if any responsive documents, and it

3

suggests that the *absence* of responsive production is precisely what it is after. *Id.* at 3–4 ("... Google knows it has few documents to produce in response to these RFPs. Documents showing that, in practice, it was almost impossible to get Google to change its mind regardless of the circumstances are plainly relevant to establishing whether Google's withholding decisions were 'reasonably determined.'"). This is not an appropriate use of document requests here.

Bulletin Marketing also argues that the discovery it seeks will help it identify atypical class members. *Id.* at 4. This argument is not well-developed in the joint submission. However, if Bulleting Marketing believes that the putative class of publishers who have had payments withheld without a corresponding refund to advertisers includes some publishers who were ultimately successful in obtaining payments that were initially withheld, the Court expects there are more direct means to identify this subset of publishers from information in Google's possession.

Bulletin Marketing speculates that Google may challenge Bulletin Marketing's anticipated motion for class certification on the ground that some publishers in the class were ultimately successful in obtaining payments, and therefore the claims or defenses of the representative parties are not typical of the claims or defenses of all class members. It would be troubling indeed if Google relied on evidence to oppose class certification that it refused to produce during pre-certification discovery. But that circumstance is not presented by this motion to compel Google's production of documents responsive to these particular document requests.

For the reasons stated above, Bulletin Marketing's motion to compel is denied.

**IT IS SO ORDERED.**

Dated: October 25, 2018

VIRGINIA K. DEMARCHI
United States Magistrate Judge

4